# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2197

_____

| | | |
|---|---|---|
| Anthony S. Cassello; Vincent DiBenedetto; Bernard Grossman; Martin L. Magee; Patricia B. Magee; Vincent Palazzolo; Anthony J. Pope; and Rocco A. Sapienza, | * * * * * | |
| | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Appellants, | * | District of Missouri. |
| | * | |
| v. | * | |
| | * | |
| Allegiant Bank and Royal Banks of Missouri, | * * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  December 12, 2001

Filed:  May 1, 2002

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Anthony Cassello and the other plaintiffs appeal the judgment of the district court granting Allegiant Bank's motion to dismiss and Royal Banks of Missouri's motion for judgment on the pleadings.  We affirm the district court's judgment in part and reverse it in part.

According to the complaint, Ronald Roberts and Kenneth Powell fraudulently induced the plaintiffs to write checks or to transfer funds by cashier's check to them, or to organizations controlled by them, in amounts that totaled more than $2.5 million. The plaintiffs further alleged that the defendants, Allegiant and Royal, acted negligently in depositing these checks because the checks lacked proper endorsements or were made payable to entities other than the ones into whose accounts they were deposited. The district court concluded that the Uniform Commercial Code (UCC) preempted any common-law claims for negligence against depositary banks, and that the UCC itself provided no cause of action for the maker of a check or the purchaser of a cashier's check against a depositary bank that improperly deposits the check.

## I.

We first consider the plaintiffs' common-law negligence claim. In interpreting state laws such as the UCC, when sitting in diversity, we are bound by the decisions of the relevant state's highest court. *See Swope v. Siegel-Robert, Inc.*, 243 F.3d 486, 496 (8th Cir. 2001), *cert. denied*, 122 S. Ct. 198 (2001). Where, as in the present case, the state's highest court has not addressed the question under consideration, we are bound to apply the rule of decision that we believe the state's highest court would apply. *See id.* In determining what the state's highest court would do, we often look to the opinions of intermediate appellate courts of that state for guidance. *See id.*

As the district court noted, the Missouri Court of Appeals has held that a negligence claim in the circumstances that this case presents does not lie because the UCC "pre-empts the claims and defenses regulating negotiable instruments, bank deposits, and collections." *City of Wellston v. Jackson*, 965 S.W.2d 867, 869 (Mo. Ct. App. 1998); *see also Consolidated Public Water Supply v. Farmers Bank*, 686 S.W.2d 844, 853 (Mo. Ct. App. 1985). While it is true, as plaintiffs maintain, that *City of Wellston* is not technically controlling because it emanates from an

intermediate court, we are obliged to follow the decisions of state intermediate courts when they provide the best evidence of what the state's law is. *Swope*, 243 F.3d at 486.

The plaintiffs nonetheless urge us to ignore *City of Wellston* because, they argue, the Supreme Court of Missouri would come to a different conclusion if the issue in this case (and that one) were to come before it. As the plaintiffs point out, in *Dalton & Marberry, P.C. v. NationsBank, N.A.*, 982 S.W.2d 231, 232-35 (Mo. 1998), the Missouri Supreme Court held that a common-law negligence action lay against a bank that failed in its duty of inquiry when an employee, who was not authorized to do so, repeatedly exchanged her employer's checks drawn on the bank for money orders or blank cashier's checks. It is plain, therefore, that the Supreme Court of Missouri would not hold that all common-law actions of negligence by a bank in connection with its handling of checks are preempted by the UCC.

Allegiant and Royal argue that *Dalton & Marberry* is inapposite because in that case the bank was both payee and drawee whereas in the instant case the banks are merely depositary banks. But there is nothing in *Dalton & Marberry* that suggests that the result there turned on this distinction. The case, it seems to us, stands for the general proposition that a drawer may in the proper circumstances sue a bank for negligently handling the drawer's checks. The UCC provides that "principles of law and equity ... shall supplement its provisions" unless "displaced by [its] particular provisions." Mo. Rev. Stat. § 400.1-103. We have discovered no "particular provision" of the UCC that would "displace" a common-law claim of negligence, so we conclude that the Missouri Supreme Court would hold that a drawer of a check could have a common-law cause of action against a depositary bank for negligently handling the drawer's check.

We come to this conclusion with some very considerable reluctance because of the holding in *City of Wellston*. But it is important to our reasoning that the UCC

-3-

itself quite specifically reserves common-law claims unless they are particularly displaced by one of its provisions. The code, in other words, does not purport to occupy the field so completely as to preempt altogether any other law dealing with bank collections. In short, it is not the only place to look to determine whether an action lies in the present circumstances.

One other point bears mentioning. We have not reached the question of whether the facts pleaded by the plaintiffs in this case actually make out a claim of negligence, because the parties have not raised or briefed that issue. We leave that matter to such further proceedings in the district court as may occur.

II.

We turn now to a consideration of the plaintiffs' contention that they have an action against Allegiant and Royal under the UCC itself. In *Rizzo Motors, Inc. v. Central Bank of Kansas City*, 825 S.W.2d 354, 357 (Mo. Ct. App. 1992), the Missouri Court of Appeals held that the UCC's transfer warranties, *see* Mo. Rev. Stat. § 400.4-207, do not run in favor of drawers. Instead, the drawer's cause of action is against his or her own bank (i.e., the drawee bank) for improper payment, not against the depositary bank. While we are not at all certain in any case that the transfer warranties extend to the actions that plaintiffs complain about here, we think that the Missouri Supreme Court would resolve the issue presented in *Rizzo* the same way that the *Rizzo* court did because the result there is supported by both reason and authority.

The UCC creates warranties in favor of transferees or holders, and the plaintiffs here are neither: they are not holders because the relevant instruments are not payable to bearer or to themselves, *see* Mo. Rev. Stat. § 400.1-201(20), and they are not transferees because they were not given possession of those instruments "for the purpose of giving [them] the right to enforce" those instruments, *see* Mo. Rev. Stat § 400.3-203(a). As a leading treatise notes, "[w]arranties made by a transferor of a check do not go beyond the drawee. Thus, the depositary bank that presents a check

for payment makes no warranty to the drawer." 2 J. White & R. Summers, *Uniform Commercial Code*, § 18-7 at 234 n. 8. (4th ed. 1995).

Royal points out that while the plaintiffs were drawers of some of the checks in issue, they were remitters of the others (the cashier's checks). The UCC defines a remitter as "a person who purchases an instrument from its issuer if the instrument is payable to an identified person other than the purchaser." Mo. Rev. Stat. § 400.3-103(a)(11). Royal argues that as remitters the plaintiffs also have no claim against the depositary banks for breach of warranty. We agree. Missouri courts have held that a remitter may assert a contract claim against the selling bank when the check is paid to an improper party. *See, e.g., C.A.L., Inc. v. Worth*, 813 S.W.2d 12, 16 (Mo. Ct. App. 1991); *Twellman v. Lindell Trust Co.*, 534 S.W.2d 83, 97 (Mo. Ct. App. 1976). But a remitter lacks a cause of action under the UCC against a depositary bank, unless, of course, the depositary bank was also the issuing bank. The proper party to sue the depositary bank under the UCC is the drawee. *See Twellman*, 534 S.W.2d at 98. The remitter should instead bring his or her action, if any, against the bank that sold the remitter the cashier's check. *See C.A.L*, 813 S.W.2d at 16; *Twellman*, 534 S.W.2d at 97. While it is true that *C.A.L.* and *Twellman* were decided before adoption of the revised UCC in Missouri, we see nothing in the revised version that would make for an opposite result in this case.

## III.

For the foregoing reasons, we affirm the judgment of the district court in part and reverse it in part. We remand the case to the district court for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.