Lamar MOORE, et al., Appellants,

v.

**ARMED FORCES BANK, N.A., et al., Respondents.**

**WD 80280**

Missouri Court of Appeals, Western District.

Filed: September 19, 2017

Application for Transfer to Supreme Court Denied October 31, 2017.

Application of Transfer Denied December 19, 2017

James D. Lawrence, Timothy J. Davis, Kansas City, for respondents.

Michael P. Healy, Lee's Summit, for appellants.

Before Division One: James E. Welsh, Presiding Judge, Lisa White Hardwick and Gary D. Witt, Judges

Lisa White Hardwick, Judge

Lamar Moore and Tony Moore (collectively, "the Moores") appeal from a judgment dismissing their lawsuit against Armed Forces Bank, N.A. The Moores contend the court erred in dismissing Counts II and III of their petition for failure to state a claim upon which relief could be granted.[1] They also contend the court abused its discretion in denying their motion to amend their petition. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Over 30 years ago, friends and business partners Lamar Moore ("Lamar") and Gary Dickinson ("Dickinson") had a discussion about a business opportunity. Dickinson informed Lamar that he was planning to purchase Armed Forces Bank, N.A. ("Armed Forces Bank").[2] Dickinson and Lamar also discussed the possibility of Lamar's purchasing part of Armed Forces Bank as an investor. They agreed that Lamar would purchase a five percent interest for $180,000. Lamar paid the purchase price to either Dickinson or Armed Forces Bank. As in prior dealings between Lamar and Dickinson, Dickinson handled the paperwork related to the stock purchase.

In 1983, Lamar entered into a separation agreement with his wife, Shirley Moore ("Shirley") as part of their divorce.

The agreement provided that Lamar would transfer his stock in Armed Forces Bank to Shirley. Thereafter, apart from informing Dickinson that Shirley was to receive his stock in Armed Forces Bank, Lamar did not take any action to transfer his stock to Shirley. Dickinson passed away in 1997. To Lamar's knowledge, no formal transfer of stock was ever made to Shirley.

In 2009, Shirley died, and her son Tony Moore ("Tony") was appointed as the executor of her estate. As part of his duties as executor, Tony looked for but could not find any Armed Forces Bank stock certificates.[3] Lamar was also unsuccessful in his attempt to locate Armed Forces Bank stock certificates.

Lamar and Tony later filed an action against Armed Forces Bank and Dickinson Financial Corporation[4] in the circuit court of Jackson County on December 9, 2015. They asserted claims of "Equitable Accounting," "Replacement of Lost Stock Certificates," and a breach of contract claim, which the Moores captioned as "Specific Performance or Alternatively, Damages."

In April 2016, Defendants filed a motion to dismiss the Moores' petition. The motion asserted various grounds for dismissal, including that the petition failed to state a valid claim for relief, that the Moores' claims were barred by the statute of limitations, and that Lamar lacked standing to pursue the claims. The Moores filed a response in opposition to Defendants' motion to dismiss and requested

---

1. The Count I claim for equitable accounting was also dismissed but is not challenged on appeal.

2. Armed Forces Bank was known as "Army National Bank" at the time.

3. The Moores also alleged that Dickinson could have unilaterally transferred the stock to Shirley after Lamar informed him about the terms of the separation agreement, which forms the basis for Tony's inclusion in the lawsuit.

4. Dickinson Financial is the parent company of Armed Forces Bank.

leave to amend their petition in the event that the court found that their breach of contract claim failed to state a claim for relief.

On August 10, 2016, the circuit court entered its judgment granting Defendants' motion and dismissing the Moores' petition with prejudice. Five days later, the Moores filed a motion to amend their petition along with a proposed amended petition. On October 7, 2016, the court entered an order denying the Moores' motion to amend their petition, noting that it had already implicitly denied the Moores' request to amend in its August 10, 2016 judgment and order. The Moores appeal.

### STANDARD OF REVIEW

We review the grant of a motion to dismiss *de novo* and will consider only whether the grounds stated in the motion supported dismissal. *Aldridge v. Francis*, 503 S.W.3d 314, 316 (Mo. App. 2016). We accept the plaintiffs' allegations in the petition as true and grant the plaintiffs all reasonable inferences therefrom. *Campbell v. Cty. Comm'n of Franklin Cty.*, 453 S.W.3d 762, 767 (Mo. banc 2015). "The petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action or of a cause that might be adopted in that case." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 101 (Mo. banc 2010).

### ANALYSIS

In Point I, the Moores contend the circuit court erred in dismissing their Count II claim for "Replacement of Lost Stock Certificates." They argue that the factual allegations in Count II stated a claim under both Section 351.295[5] and Section 400-8.405.

The Moores assert that they are entitled to the reissuance of stock certificates representing Lamar's five percent ownership interest in Armed Forces Bank, or alternatively, a stock certificate to the Estate of Shirley Moore for the five percent interest. Section 351.295 provides that "every holder of stock represented by certificates shall be entitled to have a certificate." On appeal, the Moores argue that this statutory provision constitutes an implied private right of action for a shareholder to sue for the replacement of a lost stock certificate. We disagree.

"The creation of a private right of action by implication is not favored, and the trend is away from judicial inferences that a statute's violation is personally actionable." *State, Dept. of Soc. Servs., Div. of Med. Servs. v. Brundage*, 85 S.W.3d 43, 49 (Mo. App. 2002) (quoting *Shqeir v. Equifax*, 636 S.W.2d 944, 947 (Mo. banc 1982)). Moreover, "[w]hen the legislature has established other means of enforcement, we will not recognize a private civil action unless such appears by clear implication to have been the legislative intent." *Johnson v. Kraft Gen. Foods, Inc.*, 885 S.W.2d 334, 336 (Mo. banc 1994) (citation omitted). As discussed *infra*, the legislature has provided shareholders a civil remedy to replace lost stock certificates under Section 400.8-405. Thus, in the absence of clear legislative intent, we decline to find that Section 351.295 creates a private right of action.

Section 400.8-405, located in Missouri's version of the Uniform Commercial Code, sets forth a procedure for owners of certificated securities to seek replacement stock certificates.[6] "This section enables

---

**5.** All statutory references are to the Revised Statutes of Missouri 2016.

**6.** Section 400.8-405(a) provides:

    (a) If an owner of a certificated security ... claims that the certificate has been lost,

the owner to obtain a replacement of a lost, destroyed or stolen certificate, provided that reasonable requirements are satisfied *and a sufficient indemnity bond supplied.*" § 400.8-405, comment 2 (emphasis added). In this case, the Moores did not plead the bond element of Section 400.8-405 in their petition. The Moores contend, however, that it was not necessary to plead this element because the absence of an indemnity bond is nothing more than an affirmative defense that their petition did not need to anticipate.

The Moores cite to *Powell v. Buchanan County*, 348 Mo. 807, 155 S.W.2d 172 (1941), in support of their contention that supplying an indemnity bond is not a prerequisite to relief under Section 400.8-405. In *Powell*, the plaintiff brought an action against the county to recover the balance due on his statutory salary as Chief Deputy County Highway Engineer. *Id.* at 173. As a defense, the county raised an unrelated statute that required assistants to the Highway Engineer to post a bond "for faithful performance, and to account for and deliver tools, machinery, etc. to his successor[.]" *Id.* at 175. The county claimed that the plaintiff's failure to post such a bond barred him from any recovery. *Id.* In rejecting the county's claim, the court found that "no issue was raised by the pleadings or at the trial court about a bond. . . . It would seem that such an issue should be raised as an affirmative defense to be supported by proof of an order fixing and requiring a bond of the Chief Deputy." *Id.*

In this case, the statute under which the Moores brought the action expressly provided for a bond requirement. *See* § 400.8-

405. Unlike the statute relied on by the plaintiff in *Powell*, the plain language of Section 400.8-405 clearly states that the posting of an indemnity bond is a prerequisite to relief, providing that "the issuer shall issue a new certificate *if* the owner . . . files with the issuer a sufficient indemnity bond[.]" (Emphasis added.) Accordingly, we do not find *Powell* persuasive in these circumstances. We conclude that the Moores' failure to plead the bond element of Section 400.8-405 was fatal to Count II, of their petition.

Because the Moores failed to allege an essential element of their action for replacement of stock certificates, the circuit court properly dismissed Count II of their petition. Point I is denied.

■ In Point II, the Moores contend the circuit court erred in dismissing their Count III breach of contract action for failure to state a claim. The essential elements of a breach of contract action include: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney*, 304 S.W.3d at 104.

■ In their petition, the Moores alleged that "Gary Dickinson and Lamar Moore agreed that Lamar Moore would purchase five percent (5%) of [Armed Forces Bank] for the sum of $180,000.00." The Moores did not allege, however, that Armed Forces Bank was a party to this alleged contract. "It has long been a basic tenet of contract law that one not a party to a contract is not bound thereby and is not liable for breach of a contract to which

destroyed or wrongfully taken, the issuer shall issue a new certificate if the owner:
  (1) So requests before the issuer has notice that the certificate has been acquired by a protected purchaser;

  (2) Files with the issuer a sufficient indemnity bond; and
  (3) Satisfies other reasonable requirements imposed by the issuer.

he is not a party." *Turner v. Wesslak*, 453 S.W.3d 855, 858 (Mo. App. 2014).

On appeal, the Moores argue that, "when broadly construed[,] the petition infers Dickinson was acting as the agent of [Armed Forces Bank] at the time of the stock purchase agreement" and, therefore, Armed Forces Bank is a party to the contract under an agency theory. We disagree. The petition alleged that Dickinson and Lamar discussed Lamar's purchasing part of Armed Forces Bank as an investor "[a]t the time Dickinson was *planning to purchase* [Armed Force Bank]." (Emphasis added.) Accordingly, the allegations in the petition did not permit an inference that Dickinson was acting as Armed Forces Bank's agent at the time of the agreement between Dickinson and Lamar.

Because the Moores failed to allege an essential element of a breach of contract action, the circuit court properly dismissed Count III of their petition. Point II is denied.

■ In Point III, the Moores contend the circuit court abused its discretion in denying their motion for leave to amend their petition, which they filed after the court entered its judgment of dismissal. Specifically, the Moores note that motions for leave to amend should be freely granted, and they argue that the court should have granted their motion because no party claimed prejudice by the amendment and no discovery had occurred.

■ Rule 55.33(a) provides that leave to amend a pleading "shall be freely given when justice so requires." The circuit court's decision whether to grant or deny

leave to amend "will not be disturbed absent an obvious and palpable abuse of discretion." *Robinson v. City of Kansas City*, 451 S.W.3d 315, 319 (Mo. App. 2014) (citation omitted). In reviewing the court's decision, "we are concerned with whether justice is furthered or subverted by the trial court's decision." *City of Wellston v. Jackson*, 965 S.W.2d 867, 871 (Mo. App. 1998). "In that context the request to amend after a judgment of dismissal is not the same as one made before dismissal." *Id.* "Our liberal amendment rules are not meant to be employed as a stratagem of litigation ... after previous contentions failed." [7] *Kenley v. J.E. Jones Constr. Co.*, 870 S.W.2d 494, 498 (Mo. App. 1994).

■ Courts consider a number of factors in determining whether to grant leave to amend a petition, such as: "the reasons for the moving party's failure to include the matter in the original proceedings; whether there is any prejudice to the non-moving party; and whether there will be hardship to the party requesting amendment if the request is denied." *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 92 (Mo. App. 2012) (citation omitted). Courts have found no abuse of discretion in denying leave to amend when the moving party "fail[s] to show the pleadings include any facts that were unknown when the original pleading was filed." *Id.; see also Tisch v. DST Sys. Inc.*, 368 S.W.3d 245, 258 (Mo. App. 2012). Additionally, "[a] trial court does not err when it denies a motion to amend a pleading to assert a claim that possesses no merit." *Fosket v.*

---

7. In their brief, the Moores also seem to take issue with the fact that the court never explicitly ruled on their request for leave to amend their petition that they included in their opposition to Respondents' motion to dismiss. They cite *Manzer v. Sanchez*, 985 S.W.2d 936 (Mo. App. 1999), for the proposition that a

court's failure to rule on a plaintiff's motion for leave to amend prior to sustaining a defendant's motion to dismiss is an abuse of discretion. The Moores did not raise this as error in their point relied on. Therefore, we will not consider it. *State v. Daggett*, 170 S.W.3d 35, 42 (Mo. App. 2005).

*City of Dixon*, 398 S.W.3d 571, 573 (Mo. App. 2013) (citation omitted).

In this case, the Moores' motion for leave to amend included a proposed amendment to their breach of contract claim. The Moores sought to amend their claim by asserting that "Dickinson was speaking and acting on behalf of [Armed Forces Bank] in connection with this agreement." This amendment was sought to "clarify that Gary Dickinson was acting on behalf of [Armed Forces Bank]" at the time of the agreement between Dickinson and Lamar and, as a result, that a contract existed between Armed Forces Bank and Lamar—a necessary element of their breach of contract claim.

The Moores' proposed amendment did not present any new facts or circumstances that could not have been raised earlier, and the Moores provided no explanation why the amendment was not included in the original petition. *Dibrill,* 383 S.W.3d at 92. Moreover, there were no supporting factual allegations included in the petition to support the Moores' claim that Dickinson was acting on behalf of Armed Forces Bank at the time of the agreement between Dickinson and Lamar.[8] "Under the fact pleading requirements in Missouri, this mere conclusion, without any allegation of supporting facts, is disregarded in determining whether Plaintiffs stated a claim[.]" *Philips v. Citimortgage, Inc.,* 430 S.W.3d 324, 333 (Mo. App. 2014). *See also Jennings v. Bd. of Curators of Mo. State Univ.,* 386 S.W.3d 796, 798 (Mo. App. 2012) (stating that courts "disregard such conclusions in determining whether a petition states a claim"). Accordingly, the Moores' proposed amendment did not cure

the defect in their breach of contract claim. We, therefore, conclude that the circuit court did not abuse its discretion in denying the Moores' motion for leave to amend their petition. Point III is denied.

## CONCLUSION

The circuit court's judgment is affirmed.

All Concur.

---

8.  In fact, the only factual allegation included in the petition regarding Dickinson's relationship with Armed Forces Bank at the time of the agreement between Dickinson and Lamar stands for just the opposite, as the Moores alleged that Dickinson's and Lamar's agreement occurred "[a]t the time Dickinson was *planning* to purchase [Armed Forces Bank]." (Emphasis added.)